Case 4:23-mj-01210 Document 7 Filed on 06/07/23 in TXSD Page 1 of 9

United States Courts
Southern District of Texas
FILED
June 07, 2023
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

SALIF NDAMA-TRAORE,
KYLE EMORDI,
KEITH EMORDI,
AMADOU TIDIANE BA,
MOHAMED NABIL ELIKPLIM AKINOTCHO, and

Defendants.

4:23-mj-1210

SEALED INDICTMENT

23 Cr.

23 CRIM 265

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

### Overview of the BEC Scheme

1. From at least in or about July 2021 through at least in or about February 2022, in the Southern District of New York and elsewhere, SALIF NDAMA-TRAORE, KYLE EMORDI, KEITH EMORDI, AMADOU TIDIANE BA, MOHAMED NABIL ELIKPLIM AKINOTCHO, and the defendants, and others known and unknown, engaged in a fraudulent business email compromise ("BEC") scheme that deceived at least five victims in three states (the "Victims") into making payments to bank accounts controlled by the defendants and their co-conspirators, rather than to the intended beneficiaries of the payments.

2. In furtherance of the fraudulent scheme, SALIF NDAMA-TRAORE, KYLE EMORDI, KEITH EMORDI, AMADOU TIDIANE BA, MOHAMED NABIL ELIKPLIM AKINOTCHO, and the defendants, and others known and unknown, used email spoofing to send to the Victims, or their legal representatives, emails that purported to be

from individuals and entities with whom the Victims were in a contractual relationship (the "Legitimate Counterparties"), but which were, in truth and fact, sent using email domains that closely resembled the domains used by the Legitimate Counterparties.

3. The spoofed emails instructed the Victims to remit certain payments to bank accounts (the "Fraudulent Accounts") that were, unbeknownst to the Victims, created and controlled by SALIF NDAMA-TRAORE, KYLE EMORDI, KEITH EMORDI, AMADOU TIDIANE BA, MOHAMED NABIL ELIKPLIM AKINOTCHO, and the defendants, and others known and unknown. The defendants and their co-conspirators opened the Fraudulent Accounts using false identities and stolen identification information in order to receive the Victims' funds and redistribute the funds among the co-conspirators.

4. In accordance with the fraudulent instructions, the Victims were deceived into making payments to the Fraudulent Accounts controlled by the defendants and their co-conspirators. Specifically:

   a. On or about July 15, 2021, in connection with a real estate deal, Victim-1, a company that facilitates loan closings, wired approximately $65,153 to Fraudulent Account-1, which was opened the previous week.

   b. On or about September 10, 2021, in connection with a real estate deal, Victim-2, a law firm, wired approximately $452,649 to Fraudulent Account-2, which was opened six months earlier with a fake driver's license.

   c. On or about October 26, 2021, Victim-3, a logistics company, paid approximately $3,508,313 in settlement proceeds by Automated Clearing House ("ACH") transfer to an account belonging to an unnamed co-conspirator ("CC-1"), after which the funds were divided and transferred to Fraudulent Account-1 and Fraudulent Account-3. Fraudulent Account-

3 had been opened two months earlier.

   d. On or about December 9, 2021, Victim-4, a labor union, sent three wires totaling approximately $1,006,195 in invoice payments to Fraudulent Account-4, which was opened the previous month with a fake driver's license. An employee of Victim-4 initiated the fraudulently induced wire transfers from a computer located in the Southern District of New York.

   e. In or about January 2022, Victim-5, a hospital, mailed a check for $765,764 in invoice payments to an address in Texas. On or about February 3, 2022, the check was deposited into Fraudulent Account-5, which was opened the day before with a stolen social security number.

   5. Through false and deceptive representations made over the course of the scheme, SALIF NDAMA-TRAORE, KYLE EMORDI, KEITH EMORDI, AMADOU TIDIANE BA, MOHAMED NABIL ELIKPLIM AKINOTCHO, and        the defendants, and others known and unknown, caused the Victims to transfer a total of approximately $5,798,076 in U.S. currency to bank accounts controlled by the defendants and their co-conspirators. Some of the funds were recovered, resulting in a net loss of approximately $2.66 million.

   6. After the Victims remitted the payments in accordance with the fraudulent instructions, SALIF NDAMA-TRAORE, KYLE EMORDI, KEITH EMORDI, AMADOU TIDIANE BA, MOHAMED NABIL ELIKPLIM AKINOTCHO, and       the defendants, and others known and unknown, caused the Victims' funds to be quickly transferred and laundered from the Fraudulent Accounts to other bank accounts that were controlled by the defendants and their co-conspirators.

   7. Specifically, a substantial portion of the funds were transferred to bank accounts held in the legal names of SALIF NDAMA-TRAORE, KYLE EMORDI, KEITH EMORDI, AMADOU TIDIANE BA, MOHAMED NABIL ELIKPLIM AKINOTCHO, and

the defendants, or to business accounts for which KYLE EMORDI is the sole signatory. The defendants and their co-conspirators then quickly withdrew most of the funds in cash, or transferred the funds to additional checking, savings or investment accounts also held in the legal names of the defendants and their co-conspirators. The cash withdrawals were often just under $10,000, which is the amount that triggers an automatic currency transaction report ("CTR").

8. For example, on September 10, 2021, the day Victim-2 wired approximately $452,649 to Fraudulent Account-2, the fraud proceeds were distributed to multiple accounts, including as follows:

    a. On and after September 10, fraud proceeds in the amount of $85,000 from Fraudulent Account-2 were deposited by check in a bank account held in the name of SALIF NDAMA-TRAORE, the defendant, and later that month removed in substantial part through one cash withdrawal of $9,200, two cash withdrawals of $8,000, and one ACH transfer of $5,500.

    b. On September 10, fraud proceeds in the amount of $75,000 from Fraudulent Account-2 were deposited by check in a bank account held in the name of MOHAMED NABIL ELIKPLIM AKINOTCHO, the defendant; a week later transferred to a second bank account held in AKINOTCHO's name; and subsequently transferred to an investment account held in AKINOTCHO's name through five transfers of $9,000.

9. Similarly, on and after December 9, 2021, the day Victim-4 wired approximately $1,006,195 to Fraudulent Account-4, the fraud proceeds were distributed to multiple accounts, including as follows:

a. On December 9, fraud proceeds in the amount of $150,000 from Fraudulent Account-4 were deposited in a bank account held in the name of KEITH EMORDI, the defendant.

b. On December 9, fraud proceeds in the amounts of $150,000 and $180,000 from Fraudulent Account-4 were deposited by check in two bank accounts ("NDAMA-TRAORE Bank Account-1" and "NDAMA-TRAORE Bank Account-2") held in the name of SALIF NDAMA-TRAORE, the defendant.

c. On December 17, fraud proceeds in the amount of $80,000 from NDAMA-TRAORE Bank Account-1 were deposited into a bank account held in the name of AMADOU TIDIANE BA, the defendant, then withdrawn from the BA account in one withdrawal of $30,000, five withdrawals of $9,000 and one withdrawal of $2,000.

d. From December 16 to January 6, three Zelle payments of $3,000 and two Zelle payments of $2,000 were made from NDAMA-TRAORE Bank Account-1 to a bank account held in the name of                   the defendant.

e. On December 9, $200,000 in fraud proceeds from Fraudulent Account-4 were deposited by check in a bank account held in the name of a company solely owned by KYLE EMORDI, the defendant, the defendant, and from December 17 to December 29, $192,000 of the fraud proceeds were withdrawn from that company account in 12 checks of varying amounts.

## Statutory Allegations

10. From at least in or about June 2021 through at least in or about February 2022, in the Southern District of New York and elsewhere, SALIF NDAMA-TRAORE, KYLE EMORDI, KEITH EMORDI, AMADOU TIDIANE BA, MOHAMED NABIL ELIKPLIM AKINOTCHO, and                        the defendants, and others known and unknown, willfully and

knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

11. It was a part and an object of the conspiracy that SALIF NDAMA-TRAORE, KYLE EMORDI, KEITH EMORDI, AMADOU TIDIANE BA, MOHAMED NABIL ELIKPLIM AKINOTCHO, and                    the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, the defendants and their co-conspirators perpetrated a scheme using fraudulent emails to deceive the Victims into directing funds intended for third parties into bank accounts controlled by the defendants and their co-conspirators, and, in connection therewith and in furtherance thereof, the defendants transmitted and caused to be transmitted interstate and foreign wire transfers of funds from and through the Southern District of New York.

(Title 18, United States Code, Section 1349.)

### COUNT TWO
### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

12. The allegations contained in the paragraphs 1 through 9 are hereby repeated and realleged as if fully set forth herein.

13. From at least in or about June 2021 through at least in or about February 2022, in the Southern District of New York and elsewhere, SALIF NDAMA-TRAORE, KYLE EMORDI, KEITH EMORDI, AMADOU TIDIANE BA, MOHAMED NABIL ELIKPLIM AKINOTCHO,

and                              the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i).

14. It was a part and an object of the conspiracy that SALIF NDAMA-TRAORE, KYLE EMORDI, KEITH EMORDI, AMADOU TIDIANE BA, MOHAMED NABIL ELIKPLIM AKINOTCHO, and                           the defendants, and others known and unknown, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which transactions affected interstate and foreign commerce and involved the use of such financial institutions which were engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

15. It was further a part and an object of the conspiracy that SALIF NDAMA-TRAORE, KYLE EMORDI, KEITH EMORDI, AMADOU TIDIANE BA, MOHAMED NABIL ELIKPLIM AKINOTCHO, and                     the defendants, and others known and unknown, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which transactions affected interstate and foreign commerce and involved the use of such financial institutions which were engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the

7

proceeds of specified unlawful activity, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to avoid a transaction reporting requirement under state or federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

16. It was further a part and an object of the conspiracy that SALIF NDAMA-TRAORE, KYLE EMORDI, KEITH EMORDI, AMADOU TIDIANE BA, MOHAMED NABIL ELIKPLIM AKINOTCHO, and                    the defendants, and others known and unknown, would and did engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, the proceeds of the wire fraud conspiracy charged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATION

17. As a result of committing the offense alleged in Count One of this Indictment, SALIF NDAMA-TRAORE, KYLE EMORDI, KEITH EMORDI, AMADOU TIDIANE BA, MOHAMED NABIL ELIKPLIM AKINOTCHO, and                    the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

18. As a result of committing the offense alleged in Count Two of this Indictment, SALIF NDAMA-TRAORE, KYLE EMORDI, KEITH EMORDI, AMADOU TIDIANE BA,

MOHAMED NABIL ELIKPLIM AKINOTCHO, and                    the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

### Substitute Assets Provision

19. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

**Original Signature on File**

FOREPERSON

*Damian Williams*
DAMIAN WILLIAMS
United States Attorney